UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUIS ARNAUD, on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>- against -<br><br>DOCTOR'S ASSOCIATES, INC. d/b/a SUBWAY,<br><br>*Defendant*. | Case No. 1:18-cv-03703-NGG-SJB<br><br>Hon. Nicholas G. Garaufis<br>Magistrate Judge Sanket J. Bulsara |

### DEFENDANT DOCTOR'S ASSOCIATES, INC. D/B/A SUBWAY'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION

GREENBERG TRAURIG, LLP

200 PARK AVENUE
NEW YORK, NEW YORK 10166
TEL: (212) 801-9200
FAX: (212) 801-6400

ATTORNEYS FOR DEFENDANT DOCTOR'S ASSOCIATES, INC. D/B/A SUBWAY

TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 2

    A. Plaintiff Raises Gateway Issues That Have Been Delegated To The Arbitrator.................................................................................................................. 2

    B. Plaintiff Fails To Provide Any Evidence Refuting The Undisputed Fact That Plaintiff Had Conspicuous Notice Of The Terms Of Use And Manifested Assent To The Terms ........................................................................ 3

        1. Notice ........................................................................................................... 3

        2. Assent ........................................................................................................... 5

    C. The Arbitration Agreement Is Not Unconscionable ............................................... 7

III. CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

Cases

*American Express Co. v. Italian Colors Restaurant,*
    133 S. Ct. 2304 (2013) ................................................................................................10

*Berkson v. Gogo LLC,*
    97 F. Supp. 3d 359 (E.D.N.Y. 2015) ............................................................................5

*Bernardino v. Barnes & Noble Booksellers, Inc.,*
    No. 17-CV-04570 (LAK) (KHP), 2017 U.S. Dist. LEXIS 192814 (S.D.N.Y.
    Nov. 20, 2017) ..............................................................................................................9

*Carnival Cruise Lines, Inc. v. Shute,*
    499 U.S. 585 (1991) ......................................................................................................8

*Contec Corp. v. Remote Solution Co.,*
    398 F.3d 205 (2d Cir. 2005) .........................................................................................3

*Green Tree Financial Corp. v. Randolph,*
    531 U.S. 79 (2000) ......................................................................................................10

*Greenberg v. Doctors Assocs., Inc.,*
    No. 18-cv-22505-UU, 2018 U.S. Dist. LEXIS 177276 (S.D. Fla. Aug. 29,
    2018) .........................................................................................................................1, 2

*Guan v. Uber Technologies, Inc.,*
    236 F. Supp. 3d 711 (E.D.N.Y. 2017) ......................................................................6, 8

*Hines v. Overstock.com, Inc.,*
    668 F. Supp. 2d 362 (E.D.N.Y. 2009) ..........................................................................5

*Hirsch v. Citibank, N.A.,*
    603 F. App'x 59 (2d Cir. 2015) ....................................................................................5

*Loewen v. Lyft, Inc.,*
    129 F. Supp. 3d 945 (N.D. Cal. 2015) ........................................................................10

*Meyer v. Uber Technologies, Inc.,*
    868 F.3d 66 (2d Cir. 2017) .................................................................................. passim

*Molina v. Kaleo, Inc.,*
    No. 17-CV-7631 (RA), 2019 U.S. Dist. LEXIS 12365 (S.D.N.Y. Jan. 25,
    2019) .......................................................................................................................9, 10

*Mumin v. Uber Technologies, Inc.*,
   239 F. Supp. 3d 507 (E.D.N.Y. 2017) ................................................................................3

*Novak v. Overture Services, Inc.*,
   309 F. Supp. 2d 446 (E.D.N.Y. 2004) ................................................................................6

*O'Callaghan v. Uber Corp.*,
   27 Civ. 2094 (ER), 2018 WL 3302179 (S.D.N.Y. July 5, 2018)..........................................8

*Peng v. Uber Technologies, Inc.*,
   237 F. Supp. 3d 36 (E.D.N.Y. 2017) ..................................................................................6

*Plazza v. Airbnb, Inc.*,
   289 F. Supp. 3d 537 (S.D.N.Y. 2018).................................................................................8

*Ragone v. Atlantic Video*,
   595 F.3d 115 (2d Cir. 2010)....................................................................................7, 8, 10

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004)...............................................................................................6

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010).........................................................................................................2, 7

*Sablosky v. Edward S. Gordon Co.*,
   73 N.Y.2d 133 (1989) ........................................................................................................9

*Sacchi v. Verizon Online LLC*,
   No. 14-CV-423-RA, 2015 WL 765940 (S.D.N.Y. Feb. 23, 2015)......................................6

*Sanders v. Forex Capital Markets, LLC*,
   11 Civ. 0864 CM, 2011 WL 5980202 (S.D.N.Y. Nov. 29, 2011).......................................9

*Specht v. Netscape Communs. Corp.*,
   306 F.3d 17 (2d Cir. 2002).................................................................................................5

*Tompkins v. 23andMe, Inc.*,
   840 F.3d 1016 (9th Cir. 2016) .....................................................................................9, 10

*Van Tassell v. United Mktg. Group, LLC*,
   795 F. Supp. 2d 770 (N.D. Ill. 2011) .................................................................................5

*Whitt v. Prosper Funding, LLC*,
   No. 1:15-cv-136-GHW, 2015 WL 4254062 (S.D.N.Y. July 14, 2015)...............................4

*Wisely v. Amazon.com, Inc.*,
   709 F. App'x 862 (9th Cir. 2017) ...................................................................................3, 8

I.  **INTRODUCTION**

Plaintiff offers no evidence to refute the undisputed fact that he received notice of and gave assent to the Terms of Use Agreement that requires arbitration of this claim. Instead, plaintiff devotes most of his opposition brief to arguments that raise issues of "arbitrability" and challenge enforcement of the arbitration agreement (Opp. at 2-4, 7-17), which the parties have expressly delegated to the arbitrator (and which are unavailing, in any event). The sole issue for the Court to decide is contract formation. Because plaintiff admits that he "did click the 'I'm in' button" (Opp. at 6) above the hyperlinked Terms of Use and does not dispute that the hyperlink was clearly displayed on the "Free 6″ Sub"/"Weekly text offers" page he viewed, the evidence compels finding that the parties have entered into an agreement to arbitrate. The contention that plaintiff "did not understand [clicking the button] as constituting his signature," *id.*, is not supported by a declaration (which plaintiff did not submit). Nor is it plausible. Any reasonably prudent internet/mobile device user would have understood that clicking the opt-in button above the hyperlink constitutes assent to the Terms of Use and disclaimer for "autodialed" calls. *See* Feinberg Decl. ¶ 3. Plaintiff relies on cases that predate the Second Circuit's decision in *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66 (2d Cir. 2017), which instructs courts to "consider the perspective of a reasonably prudent smartphone user" (not a consumer unfamiliar with online contract formation and account creation) in determining whether reasonable notice and assent was provided. *Meyer* held that the parties in that case were bound by an arbitration provision in a consumer web-based contract made available via a hyperlink that was reasonably conspicuous on the screen, and where the plaintiff manifested assent by clicking on a registration button in close proximity to the hyperlinked terms. 868 F.3d at 77-80. Another district court also recently compelled arbitration of a TCPA claim against DAI based on the same arbitration provision and similar notice/assent facts. *See Greenberg v. Doctors Assocs., Inc.*, No. 18-cv-22505-UU, 2018 U.S. Dist. LEXIS 177276 (S.D. Fla. Aug. 29, 2018)

1

(compelling arbitration where plaintiff opted in to receive promotional texts and a coupon for a "Free 6″ Sub," and the offer displayed the URL address to the Terms Of Use containing an arbitration provision). Consistent with *Meyer* and *Greenberg*, the facts here warrant compelling arbitration.

## II.     ARGUMENT

### A.     Plaintiff Raises Gateway Issues That Have Been Delegated To The Arbitrator

The main thrust of plaintiff's opposition is focused on "arbitrability," which has been delegated to the arbitrator. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 79–80 (2010) (holding that where a party opposing arbitration makes a specific challenge to the arbitration provision, disputes regarding formation and enforceability are for the arbitrator to decide where "the parties have demonstrated, clearly and unmistakably that it is their intent to" delegate such questions to the arbitrator). There is a clear and express delegation to the arbitrator to decide "the scope and validity of the arbitration clause," Opp. at 2, which expressly incorporates "the Commercial Arbitration Rules of the American Arbitration Association," Cooper Decl. ¶ 5. The language is unambiguous, and cannot be read to suggest that the AAA Consumer Arbitration Rules (or any other set of rules) could potentially apply, as plaintiff argues. Opp. at 2. Even if that were the case, both the Commercial and Consumer Rules provide that "[t]he arbitrator shall have the power to rule on . . . the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim," and "to determine the existence or validity of a contract of which an arbitration clause forms a part . . . ." AAA *Commercial Arbitration Rules*, R-7, available at https://www.adr.org/sites/default/files/CommercialRules_Web.pdf; AAA *Consumer Arbitration Rules*, R-14, available at https://www.adr.org/sites/default/files/Consumer%20Rules.pdf. The Commercial Rules also state that "[a]ny disputes regarding which AAA rules shall apply shall be decided by the AAA." AAA *Commercial Arbitration Rules*, R-1(a). Thus, even if there were ambiguity about which AAA rules

2

would apply, the Rules provide that that issue is to be resolved by the arbitrator.

Plaintiff's contention that "[t]he Consumer Rules and Commercial Rules have different procedures for resolving arbitrability issues," Opp. at 4, does not override the parties' express intent and agreement, by incorporating the AAA rules, to delegate all challenges to enforcement and arbitrability to the arbitrator (not the courts) to decide. *See Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (holding that incorporation of the rules of the American Arbitration Association "serves as clear and unmistakable evidence of the parties' intent to delegate such issues to the arbitrator"); *see also Mumin v. Uber Technologies, Inc.*, 239 F. Supp. 3d 507, 525 (E.D.N.Y. 2017) (compelling arbitration over plaintiff's objection that the delegation clause was unconscionable); *Wisely v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017) (affirming an order compelling arbitration; "Nor does the incorporation by reference of the American Arbitration Association's (AAA) rules create procedural unconscionability."), *aff'g*, *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1070-71 (S.D. Cal. 2015) ("while the reference to the applicable rules could be clearer, the degree of ambiguity involved does not rise to the level of procedural unconscionability"). Not surprisingly, plaintiff cites no authority to support his argument that the Court should decide these gateway issues notwithstanding the existence of a clear delegation clause.

**B.     Plaintiff Fails To Provide Any Evidence Refuting The Undisputed Fact That Plaintiff Had Conspicuous Notice Of The Terms Of Use And Manifested Assent To The Terms**

1.     <u>Notice</u>

Plaintiff does not refute that he had both actual and constructive notice of the hyperlinked Terms of Use Agreement. The text of the offer and the hyperlink were clearly presented in the same view and did not require plaintiff to scroll down to the bottom of the screen or webpage to obtain notice of the terms. The hyperlinked terms were not buried (and plaintiff does not argue

3

that), and it was clear from the language of the disclaimer, and its close proximity to the promotion being offered, that the hyperlinked "T&Cs" applied to the "[w]eekly text offers." *See, e.g.*, *Meyer*, 868 F.3d at 78 ("The text, including the hyperlinks to the Terms and Conditions and Privacy Policy, appears directly below the buttons for registration. The entire screen is visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service. . . . Here, notice of the Terms of Service is provided simultaneously to enrollment, thereby connecting the contractual terms to the services to which they apply. . . [A] reasonably prudent smartphone user would understand that the terms were connected to the creation of a user account.").

Plaintiff's objection that "Defendant only provides consumers such as Plaintiff access to the T&Cs via a small hyperlink that consumers are not required to click," Opp. at 11, is not a basis for finding a lack of notice. The Second Circuit has ruled that "a reasonably prudent smartphone user knows that the text that is highlighted in blue and underlined is hyperlinked to another webpage where additional information will be found." *Meyer*, 868 F.3d at 77-8. "As long as the hyperlinked text was itself reasonably conspicuous . . . a reasonably prudent smartphone user would have constructive notice of the terms." *Id.* at 79;[1] *see also Whitt v. Prosper Funding, LLC*, No. 1:15-cv-136-GHW, 2015 WL 4254062, at *5 (S.D.N.Y. July 14, 2015) (enforcing an arbitration provision in an online registration agreement, pointing out that the plaintiff was not able to cite "authority indicating that a reasonably prudent website user lacks sufficient notice of terms of an agreement that are viewable through a conspicuous hyperlink," and noting that there is "an abundance of persuasive authority . . . supporting a proposition to the contrary."). Here, plaintiff does not even deny that he was aware

---

[1] *Meyer* also rejected the "determination that the location of the arbitration clause within the Terms and Conditions was itself a 'barrier to reasonable notice." *Meyer*, 868 F.3d at 79. The arbitration provision at issue appeared under the heading "Choice of Law & Dispute Resolution." Cooper Decl. Ex. A at ¶ 14. *Meyer* upheld an arbitration provision under a similar "section heading ('Dispute Resolution')," and ruled that "[a]lthough the contract terms are lengthy and must be reached by a hyperlink, the instructions are clear and reasonably conspicuous." *Meyer*, 868 F.3d at 79.

4

of the hyperlinked terms. Instead, he cites cases that are factually distinguishable and pre-date *Meyer*,[2] which found an enforceable arbitration agreement based on similar facts. Because it is clear from the language and context of the Subway® offer that plaintiff was given adequate notice that the hyperlinked "T&Cs" applied to his signing up for "weekly text offers," plaintiff cannot rest his opposition on unsubstantiated denials of an agreement to arbitrate.

2. Assent

It is undisputed that plaintiff manifested his assent to the Terms of Use. Plaintiff admits that he clicked on the "I'm In" button appearing above the hyperlinked terms and disclaimer language. Opp. at 6. Again, his alleged failure to subjectively understand this to mean assent to the terms (which is not substantiated by a declaration or other evidence) does not address the appropriate standard. The Second Circuit has held that "[a] *reasonable user* would know that by clicking the registration button, he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on the hyperlink or not." *Meyer*, 868 F.3d at 79-80 (emphasis added). Plaintiff's contention that "I'm In" does not convey the message, "I agree to the terms and conditions, including arbitration" (Opp. at 6), ignores the context of the offer presenting notice of the terms and

---

[2] *Hirsch v. Citibank, N.A.*, 603 F. App'x 59, 60 (2d Cir. 2015) (finding it was not clear error to deny arbitration where customers opening up an account signed a signature card agreeing to be bound by "any agreement governing" their accounts but did not reference the Client Manual containing the arbitration provision, which did not on its cover state that it was an agreement governing the accounts, and there was no evidence plaintiff received the Client Manual); *Specht v. Netscape Communs. Corp.*, 306 F.3d 17, 31-32 (2d Cir. 2002) (finding inadequate notice where the offer "did not carry an immediately visible notice of the existence of the license terms" that was not visible unless the user "scroll[ed] down to subsequent screens"); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359 (E.D.N.Y. 2015) (denying arbitration; the version of the hyperlinked terms of use available when plaintiff created an account did not contain an arbitration clause, and subsequent logins did not sufficiently alert the other plaintiff that he was assenting to the terms); *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009) (ruling plaintiff did not have sufficient notice of online terms that could not be viewed without scrolling down to the bottom of the screen); and *Van Tassell v. United Mktg. Group, LLC*, 795 F. Supp. 2d 770, 772 (N.D. Ill. 2011) (ruling that notice was not conspicuous, where the hyperlinked terms did not appear on the home page or check out pages, and was visible only "after scrolling to the bottom of the home page and clicking the 'Customer Service' link, and then scrolling to the bottom of" that subsequent page).

5

the means for manifesting assent. As in *Meyer* (where the user clicked on a "Register" button), plaintiff's assent need not be "express," but it was nonetheless "unambiguous in light of the objectively reasonable notice of the terms," where the "spatial and temporal coupling of the terms" with the "I'm In" button indicated that the hyperlinked terms would apply by signing up for the "[w]eekly text offers." *Meyer*, 868 F.3d at 79;[3] *see also id.* at 78 ("The fact that clicking the register button had two functions—creation of a user account and assent to the Terms of Service—does not render Meyer's assent ambiguous"); *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) ("[R]egardless whether [a user] did or did not say, 'I agree' . . . [the user's] choice was either to accept the offer of contract, taking the information subject to the terms of the offer, or, if the terms were not acceptable, to decline to take the benefits."); *Sacchi v. Verizon Online LLC*, No. 14-CV-423-RA, 2015 WL 765940, at *10 (S.D.N.Y. Feb. 23, 2015) (granting Verizon's motion to compel arbitration pursuant to its clickwrap agreement to accept terms of service contract); *Novak v. Overture Services, Inc.*, 309 F. Supp. 2d 446, 451 (E.D.N.Y. 2004) (enforcing the forum selection clause agreed to by a user who pressed a button to signify assent).

There is also no requirement that the agreement to arbitrate be actually signed or acknowledged by the parties—it is enforceable where there has been an acceptance of the benefits (here, the "free sub" coupon sent to plaintiff). *See Register.com,* 356 F.3d at 403 (ruling that "a statement of agreement by the offeree" is not required to find the existence of an agreement; "It is standard contract doctrine that when a benefit is offered subject to stated conditions, and the offeree

---

[3] The assertion that Spanish is plaintiff's "primary language" (Opp. at 6 n.9) does not suggest an inability to understand English, which plaintiff does not actually assert. Nor does it provide grounds to deny arbitration. *Guan v. Uber Technologies, Inc.*, 236 F. Supp. 3d 711, 724–25 (E.D.N.Y. 2017) (enforcing Uber's Terms of Service agreement under New York law and compelling arbitration notwithstanding that plaintiffs, native Chinese speakers, were unable to read the agreement that was provided in English) (citing *Victorio v. Sammy's Fishbox Realty Co., LLC*, No. 14-Civ-8678, 2015 WL 2152703, at *11 (S.D.N.Y. May 6, 2015) (finding that "[a]n inability to understand the English language, without more, is insufficient to avoid" contractual obligations)); *Peng v. Uber Technologies, Inc.*, 237 F. Supp. 3d 36, 55–57 (E.D.N.Y. 2017) (same).

makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree.").

Plaintiff's blanket assertion that he did not send the "Y" response to affirm his assent (via the double opt-in process), Opp. at 6, is both unsubstantiated and immaterial. There is no evidence refuting the Declaration of Alek Zdziarski verifying that a "Y" text message was sent from plaintiff's mobile number in response to a confirmation text message ("Reply Y as ur sig . . .") that was triggered by plaintiff opting into to the "weekly text offers" program on the website. Zdziarski Decl. ¶ 6. If Plaintiff had not replied with "Y" to complete the double opt-in process, he would not have received any promotional Subway® text offers. *Id.* at ¶ 9. Regardless, Plaintiff admits he clicked the "I'm In" button on the website and that itself constitutes plaintiff's assent to the terms.

        **C.**     **The Arbitration Agreement Is Not Unconscionable**

The Court need not decide whether the Terms of Use agreement or the arbitration provision is unconscionable, as plaintiff alleges, because issues of contract "validity" were delegated to the arbitrator, *supra* § II(A), and the plaintiff's substantive unconscionability challenges were not directed at the delegation provision. *See Rent-A-Center*, 561 U.S. at 73. Plaintiff's objections to other provisions of the contract, namely the modification clause (section 1), acceptable use provision (section 5), and indemnification (section 13), do not prevent the Court from enforcing the agreement to arbitrate, which is severable from the rest of the contract. *Id.* at 70-71 ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. '[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.'").

Even if the Court were to consider this issue, plaintiff fails to establish both procedural and substantive unconscionability to avoid enforcement of the agreement to arbitrate. *See, e.g.*, *Ragone v. Atlantic Video*, 595 F.3d 115, 121 (2d Cir. 2010) (affirming order compelling arbitration; "Under

7

New York law, a contract is unconscionable when it is 'so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcable [sic] according to its literal terms'"; "[T]here must be a showing that such a contract is both procedurally and substantially unconscionable."); *O'Callaghan v. Uber Corp.*, 27 Civ. 2094 (ER), 2018 WL 3302179, at *8-9 (S.D.N.Y. July 5, 2018) (compelling arbitration because New York requires a showing of both procedural and substantive unconscionability and finding the agreement was not procedurally unconscionable).

First, plaintiff's argument that the arbitration agreement is procedurally unconscionable because it is a contract of adhesion, and was not "fairly presented" to the plaintiff (Opp. at 10), is unavailing. Courts in this district have enforced contracts of adhesion containing arbitration clauses. *See, e.g.*, *Ragone*, 595 F.3d at 122 (ruling that an arbitration agreement that was offered "on a take it or leave it basis" was not procedurally unconscionable under New York law) (internal quotes omitted)); *Guan,* 236 F. Supp. 3d at 730–33 (compelling arbitration over objections that Uber's Terms of Service was unconscionable under New York law). Indeed, the notice provided here was more prominent than the forum selection clause printed in tiny font on the reverse side of cruise tickets held enforceable in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991).

As already discussed, plaintiff had reasonable and conspicuous notice of the terms. The alleged unavailability of the AAA rules, which plaintiff asserts was not attached to the Terms of Use Agreement, is not a basis for finding the terms unconscionable. Courts have specifically rejected challenges to the incorporation of reference of AAA rules as procedurally unconscionable. *See, e.g.*, *Wisely*, 709 F. App'x at 864 (affirming an order compelling arbitration; "Nor does the incorporation by reference of the American Arbitration Association's (AAA) rules create procedural unconscionability."); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 557 (S.D.N.Y. 2018)

8

(ruling that the "unavailability of the arbitration rules . . . does not necessitate a finding of procedural unconscionability"); *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017 U.S. Dist. LEXIS 192814, *34-35 (S.D.N.Y. Nov. 20, 2017) ("[T]the Second Circuit's decision in *Meyer* forecloses a finding that a hyperlink to the TOU is procedurally unconscionable. . . . [R]eference to the AAA rules within the arbitration provision does not render the agreement procedurally unconscionable in and of itself, as those rules only discuss the procedures of the arbitration process, not the agreement to submit to arbitration."). Also, the argument that it is unclear whether the Commercial or Consumer Arbitration Rules apply (Opp. at 11) at most raises an issue of ambiguity over which set of rules apply, which under both sets of rules is an issue that the parties have delegated to the arbitrator to resolve.

Second, the Terms of Use agreement is not substantively unconscionable. Courts have enforced arbitration agreements over objections to similar challenges based on the alleged "one-sided[ness]" of terms such as the modification clause (Opp. at 1, 12). *See, e.g.*, *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016) (enforcing an arbitration provision over the objection that a unilateral modification clause made the contract unconscionable); *Sanders v. Forex Capital Markets, LLC,* 11 Civ. 0864 CM, 2011 WL 5980202 (S.D.N.Y. Nov. 29, 2011) (compelling arbitration where the court found that the arbitration and modification clauses in an online securities account agreement were not unconscionable); *see also Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 137 (1989) ("Mutuality of remedy is not required in arbitration contracts."). The provision allowing DAI (but not plaintiff) to seek injunctive relief in a court of law has also been rejected as a basis for rendering the arbitration provision unenforceable. *See Molina v. Kaleo, Inc.*, No. 17-CV-7631 (RA), 2019 U.S. Dist. LEXIS 12365, at *12-13 (S.D.N.Y. Jan. 25, 2019). The Connecticut venue provision also does not render the agreement

9

unconscionable. *See, e.g., id.* at *10-11 (ruling it was not unconscionable to require arbitration in Virginia, even though it would be "cost prohibitive" for plaintiff to travel from New York); *Tompkins*, 840 F.3d at 1027-30 (enforcing an arbitration provision over the objection that the forum selection clause, requiring arbitration to take place in San Francisco, was unconscionable). Regardless, DAI has waived enforcement of that provision. *See* Mot. at 4 n.2; *see also Ragone*, 595 F.3d at 124 ("Because unconscionability is an equitable defense . . . a party cannot complain when the defendant through its waivers declines to enforce any potentially unconscionable term.").

It is not unconscionable to require payment of arbitration fees (Opp. at 12-13). *See, e.g., Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 960-65 (N.D. Cal. 2015) (enforcing an arbitration clause over the objection that AAA fees were unconscionable). Similarly, plaintiff's objection that the costs of arbitration (which will be far less than formal litigation) may exceed the recovery on his claim (Opp. at 14), does not warrant denying arbitration. *See American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013) (compelling individual arbitration of federal antitrust claims where the cost of proceeding with individual arbitration would exceed the potential maximum recovery of each claimant); *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 90–91 (2000) (finding that "[t]he 'risk' that [a plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.").

### III. CONCLUSION

For the foregoing reasons, the Court should compel arbitration and stay the proceedings.

Dated: February 1, 2019          /s/ *Lori Chang*
                                                    Lori Chang

                                                    Ian C. Ballon (admitted *pro hac vice*)
                                                    Lori Chang (admitted *pro hac vice*)
                                                    Greenberg Traurig, LLP
                                                    1840 Century Park East, Suite 1900
                                                    Los Angeles, California 90067

        Email: changl@gtlaw.com
        Tel: (310) 586-7700
        Fax: (310) 586-7800

        Will Wargo
        Greenberg Traurig, LLP
        200 Park Avenue
        New York, New York 10166
        Email: wargow@gtlaw.com
        Tel: (212) 801-9200
        Fax: (212) 801-6400

*Attorneys for Defendant Doctor's Associates, Inc. d/b/a Subway*